United States District Court
For the Northern District of California

1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7                                    )
                                     )
8    BOARD OF TRUSTEES, in their     )   No. 09-2005 SC
     capacities as Trustees of the   )
9    CEMENT MASONS HEALTH AND WELFARE )
     TRUST FUND FOR NORTHERN          )   ORDER GRANTING MOTION
10   CALIFORNIA, CEMENT MASONS PENSION )  FOR DEFAULT JUDGMENT
     TRUST FUND FOR NORTHERN          )
11   CALIFORNIA, CEMENT MASONS        )
     VACATION/HOLIDAY TRUST FUND FOR  )
12   NORTHERN CALIFORNIA, CEMENT MASONS )
     APPRENTICESHIP AND TRAINING TRUST )
13   FUND FOR NORTHERN CALIFORNIA,    )
                                      )
14           Plaintiffs,              )
                                      )
15        v.                          )
                                      )
16   S L R CONCRETE CONSTRUCTION, INC., )
     a California Corporation,         )
17                                    )
             Defendant.               )
18                                    )
     _____ )
19
20
21   I.   **INTRODUCTION**
22        Before the Court is the Motion for Default Judgment
23   ("Motion") submitted by Plaintiffs Board of Trustees of the Cement
24   Masons Health and Welfare Trust, et al. ("Plaintiffs").  ECF No.
25   28.  The Court entered default as to Defendant S L R Concrete
26   Construction, Inc. ("Defendant" or "SLR").  ECF No. 7.  The Court
27   ordered SLR to comply with an audit.  ECF No. 18 ("Dec. 9, 2009
28   Order").  Having reviewed the Motion and all supporting papers,

1   the Court GRANTS the Motion.

2

3   **II.   BACKGROUND**

4       SLR is a general building contractor.  Hagan Decl. ¶ 8.[1]   In

5   2005, SLR executed an agreement with Plaintiffs, binding it to a

6   collective bargaining agreement ("CBA").  See Hagan Decl. Exs. A

7   ("Trust Agreements"), B ("Mem. of Agreement").  Plaintiffs contend

8   that SLR is bound by the CBA to abide by the Cement Masons Master

9   Agreement, Hagan Decl. Exs. C, D (collectively, "Master

10  Agreements"), and the requirements of the Employee Retirement

11  Income Security Act of 1974 ("ERISA").  Compl., ECF No. 1.  SLR is

12  required to make monthly payments to Plaintiffs on behalf of SLR's

13  employees in amounts that are determined according to the hours

14  worked by SLR's employees.  Id. at 3.

15      Plaintiffs allege that SLR missed a number of payments due

16  under the Master Agreements.  Id. at 3-4.  Plaintiffs filed their

17  Complaint in May 2009, seeking the payments due, liquidated

18  damages, attorneys' fees, and an order that SLR submit to an audit

19  to determine if additional fees were due.  Compl. at 6.  On

20  December 9, 2009, the Court denied Plaintiff's first motion for

21  default judgment as premature, but required SLR to submit to an

22  audit.  See Dec. 9, 2009 Order.  The audit was completed on March

23  24, 2010, covering the period of August 2005 to December 2009.

24  Mot. at 2.  Plaintiffs sent the results of the audit to SLR on May

25

26      [1] John Hagan ("Hagan"), Accounts Receivable Manager for the
    Laborers Funds Administrative Office of Northern California,
27  submitted a declaration in support of the Motion.  ECF No. 30.

28                                  2

United States District Court
For the Northern District of California

11, 2010.  Id.  SLR has failed to dispute the amounts, and failed to pay the amounts due.  Id.  On October 8, 2010, Plaintiffs filed their renewed Motion for Default Judgment.  See Mot.

**III. LEGAL STANDARD**

After entry of default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b)(2).  The Court's decision whether to enter a default judgment, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors.  First, the Court must "assess the adequacy of the service of process on the party against whom default is requested."  Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. C-00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  If the Court determines that service was sufficient, it may consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).

**IV.   DISCUSSION**

  **A.   Service of Process**

Plaintiffs properly served SLR with the Complaint and Summons.  See ECF No. 4 ("Proof of Service").  The Proof of Service indicates that the documents were delivered to Laura Romanazzi, who is recorded with the California Secretary of State as SLR's designated agent for service.  Id.; Hagan Decl. Ex. E. This service complies with Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure.

  **B.   Default Judgment**

Accepting the allegations in the Complaint as true, as it must, the Court finds that the Eitel factors favor default judgment.  Section 502(a) of ERISA gives the participants and beneficiaries of an ERISA-governed pension plan a cause of action in federal court where an employer violates the terms of the plan. See 29 U.S.C. § 1132(a)(1)(B), (a)(3).  By failing to make timely contributions, SLR has violated the terms of the CBA and Master Agreements.  Therefore, Plaintiffs' substantive claims appear solid on the merits, and are pled sufficiently in the Complaint.

SLR's default cannot be said to be the result of excusable neglect.  As previously noted, SLR was properly served. Plaintiffs also sent the results of the Court-ordered audit to SLR.  Hagan Decl. ¶ 17.  Although federal policy favors a decision on the merits, Rule 55(b) allows entry of default judgment in situations where defendants fail to litigate.  Courts are less inclined to enter default judgment if there is a large sum of money at stake.  See Eitel, 782 F.2d at 1472 (denying default

4

judgment where plaintiff sought almost three million dollars).
Here, Plaintiffs seek an award of $154,122.72.  See ECF No. 31
("Proposed Order"). Mot. at 2-3.  Although the amount of money at
stake is substantial, the Court finds that on balance the Eitel
factors favor default judgment.

C.   **Unpaid Contributions, Liquidated Damages and Interest**

Plaintiffs seek an award based on unpaid contributions,
liquidated damages, and interest from August 2005 to December
2009.  Mot. at 2.  Before this litigation began, Plaintiffs
conducted an audit of SLR's books and records for the period
August 2005 through June 2007.  Hagan Decl. ¶ 11.  After the Court
ordered SLR to submit to an audit, Plaintiffs conducted another
audit for the period of August 2005 through December 2009 and
found that SLR owed $87,293.95 in delinquent contributions.  Id.
Plaintiffs have provided the Court with a chart summarizing the
results of this audit, and breaking down the amount of
contributions that were due to each of the four trusts.  Id. Ex. F
("Audit Summary and Statement of Contributions Due").  SLR also
self-reported contributions owed to Plaintiffs in the amount of
$13,151.50 for the period of December 2008 to February 2009, which
were not part of the audit amounts found to be due and owing.  Id.
¶ 12, Ex. H ("Statement of Self-Reported Contributions Due").

Based on the amount of delinquent contributions uncovered by
the audits, Plaintiffs assessed liquidated damages and interest in
the amount of $33,658.67 against SLR.  Id. ¶ 11, Ex. G ("Interest
and Liquidated Damages on Unpaid Contributions").  Based on the
amount of self-reported delinquent contributions, Plaintiffs

5

assessed liquidated damages and interest in the amount of $5786.70 against SLR. Id. ¶ 12, Ex. I ("Interest and Liquidated Damages on Self-Reported Contributions").

Finally, SLR paid contributions for the months of December 2005, and September 2008 through January 2009, but the payments were late. As a result, Plaintiffs assessed liquidated damages and interest in the amount of $4169.75 against SLR. Id. ¶ 13, Ex. J ("Interest and Liquidated Damages on Late Payments").

Both interest and liquidated damages are authorized by statute. 29 U.S.C. § 1132(g)(2). Unpaid contributions must exist at the time of suit for statutory liquidated damages to be awarded. Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215-16 (9th Cir. 1989). Plaintiffs may also recover liquidated damages on contributions that became due after the Complaint was filed. See Roofers Local Union No. 81 v. Wedge Roofing, Inc., 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992) (finding it would undermine policy goals of deterring ERISA violations to require plaintiff to file multiple lawsuits to recover liquidated damages which came due after complaint was filed).

Here, the first audit was conducted before the Complaint was filed, and based on audits conducted, Plaintiffs found that SLR owed contributions, liquidated damages and interest. SLR was sent a copy of the audit results and did not dispute them. Hagan Decl. ¶ 17. Having failed to respond to this lawsuit, even after its books were audited as a result of this Court's Order, and based on the evidence submitted, the Court finds that Plaintiffs are

6

entitled to $100,445.45 in delinquent contributions ($87,293.95 +
$13,151.50), and liquidated damages and interest in the amount of
$43,615.12 ($33,658.67 + $5786.70 + $4169.75).

     **D.**   **Attorneys' Fees and Costs**

    In addition, under ERISA, Plaintiffs are entitled to recover
reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2);
<u>Operating Engineers Pension Trust v. Reed</u>, 726 F.2d 513, 514 (9th
Cir. 1984).  The declaration submitted by Plaintiffs' counsel
outlines the billing rates, explains the work performed by
attorneys and one paralegal, and describes the experience of the
attorneys and paralegal who worked on the case.  Lozano-Batista
Decl. ¶¶ 4-8.[2]  Accordingly, the Court awards Plaintiffs
attorneys' fees of $9406.25.  Plaintiffs' counsel itemized their
incurred costs.  <u>Id.</u> ¶ 13.  The Court awards costs of $655.90.

///

///

///

///

///

///

///

///

///

///

///

_____

    [2] Concepción E. Lozano-Batista, attorney for Plaintiffs, filed
a declaration in support of the Motion.  ECF No. 29.

**United States District Court**
For the Northern District of California

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Motion for Default Judgment filed by Plaintiffs Board of Trustees, in their capacities as Trustees of the Cement Masons Health and Welfare Trust Fund for Northern California, Cement Masons Pension Trust Fund for Northern California, Cement Masons Vacation/Holiday Trust Fund for Northern California, and Cement Masons Apprenticeship and Training Trust Fund for Northern California.

IT IS SO ORDERED.

December 28, 2010

_____

UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

8